*600 TEXTO COMPLETO DE LA SENTENCIA
Longina García Gómez y Filibert Pacheco Cuttle comparecen ante nos procurando la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante la misma, se desestimó la demanda sobre daños y peijuicios incoada por éstos contra el Estado Libre Asociado de Puerto Rico (en adelante “E.L.A.”).
Examinado el expediente en su totalidad, revocamos la sentencia apelada y devolvemos el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo que aquí se dispone.
I
La demanda de epígrafe tuvo su génesis en los hechos acontecidos el 8 de mayo de 2000, mediante los cuales a los apelantes se les privó de la custodia de su hija menor de edad. En la mencionada fecha, el Departamento de la Familia, por conducto del Programa de Emergencias Sociales, se personaron al hogar de los apelantes en atención a una confidencia recibida. Alegadamente, la menor estaba siendo maltratada por sus padres. Además, estaba embarazada y sus padres tenían la intención de llevarla a California para realizarle un aborto.
Ante esas alegaciones, el Departamento de la Familia, a través del Emergencias Sociales, procedió a privar a los apelantes de la custodia de su hija menor de edad, M.P.G., de conformidad a la Ley Núm. 342 de 16 de diciembre de 1999, conocida como “Ley para el Amparo a Menores en el Siglo XXI”, 8 L.P.R.A. §441, et seq. La menor fue puesta bajo la custodia del Departamento de la Familia en virtud de una orden emitida por el Tribunal Municipal de San Juan. El Departamento de la Familia ubicó a la menor en dos (2) hogares sustitutos, de los cuales ésta se evadió, desconociéndose su paradero por varios días. Esto provocó que la vista de ratificación de custodia fuera suspendida en varias ocasiones, hasta que finalmente se localizó a la menor. En uno de los hogares donde fue ubicada la menor, Casa San Gerardo (para jóvenes embarazadas), la persona encargada llamó a la aquí apelante para informarle que su hija se había evadido. Ello provocó que la señora Longina García Gómez sufriera un ataque de histeria, debido a que confiaba en que al estar la menor bajo la tutela del Departamento de la Familia, su seguridad estaría garantizada.
La vista de ratificación se celebró posteriormente junto a una vista evidenciaría, declarando en la misma, la señora Longina García Gómez, funcionarios del Departamento de la Familia y la menor.
Desfilada la pmeba, el Tribunal de Primera Instancia determinó que la remoción realizada por el Departamento de la Familia no fue conforme a derecho, al no haberse presentado evidencia de maltrato físico o emocional, ni emergencia que la ameritara. Tampoco se demostró que la menor estuviera embarazada y que los padres planificaban trasladarla fuera de la jurisdicción de Puerto Rico. El dictamen fue emitido en corte abierta y se le ordenó al Departamento de la Familia que entregara la menor a sus padres, aquí apelantes. A su vez, el tribunal ordenó que la menor fuera ubicada, a manera de transición, en la Casa San Gerardo por un mes y que fuera sometida a pruebas sicológicas.
Posteriormente, el tribunal de instancia emitió una minuta de los procedimientos, dictando a su vez una Resolución y Sentencia a favor de los apelantes.
*601 En virtud de lo anterior, Longina García Gómez y Filibert Pacheco Cuttle presentaron demanda sobre daños y perjuicios contra el E.L.A. y otros. Le imputaron negligencia al Departamento de la Familia al remover a su hija menor de edad del hogar y privarlos de su custodia. Argüyeron en la demanda que la técnica del Programa de Emergencias Sociales, Brenda Serrano, llegó al hogar de los apelantes y procedió a remover a la menor sin corroborar la información que recibiera mediante una confidencia. La remoción ilegal y el desconocimiento del paradero de su hija, al evadirse ésta de los hogares donde fue ubicada, les causó una intensa angustia, tensión mental y miedo de que su hija pudiese sufrir grave daño corporal y hasta la muerte, dada la alta incidencia de violencia que sacude al país. Fundamentaron su reclamación en los Artículos 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. §5141, 5142.
Previo a la presentación de la demanda, los apelantes cumplieron con el requisito impuesto en el Artículo 2 (A) de la Ley 104 del 29 de junio de 1945, según enmendada, 32 L.P.R.A. §3077(A), notificándole al E.L.A. sobre el pleito en su contra.
Luego de varios incidentes procesales, los aquí apelantes presentaron una moción solicitando que se dictara sentencia sumaria parcial a su favor. Basaron su petitorio en que el foro de instancia había determinado la ilegalidad de la remoción de custodia de la menor. El Estado se opuso a la petición. A su vez, presentó una solicitud de sentencia sumaria argumentando que el Tribunal de Primera Instancia estaba impedido de pasar juicio sobre la demanda a tenor con lo establecido en Jiménez Alvarez v. Silen Maldonado, 131 D.P.R. 91 (1992).
El Tribunal de Primera Instancia, acogiendo la solicitud del Estado como una moción de desestimación, dictó sentencia desestimando la demanda incoada por los apelantes, con perjuicio. Resolvió que aun cuando los apelantes se vieron sometidos a un proceso civil promovido por el Estado, en el mismo no había mediado malicia. Entendió además el tribunal de instancia que no se daban los requisitos para atender el pleito como una acción de daños y perjuicios por persecución maliciosa.
Inconformes con el referido dictamen, los apelantes acudieron ante esta Curia mediante el recurso de epígrafe. En síntesis, alegaron que erró el tribunal de instancia al determinar que no tenían una causa de acción contra el Estado a la luz de jurisprudencia claramente distinguible del caso de marras.
De otra manera, el Estado compareció discutiendo extensamente el propósito y alcance de las disposiciones contenidas en la Ley para el Amparo a Menores en el Siglo XXI, 8 L.P.R.A. §441 et seq. Además, argüyó que las actuaciones realizadas por funcionarios del Estado en protección de los menores, bajo el palio protector de la citada ley, estaban cobijadas por la inmunidad conferida al Estado en la Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. §3077, et seq.
Contando con el beneficio de la comparecencia de ambas partes, procedemos a evaluar el recurso en sus méritos.
II
El objetivo principal de la Ley 342, supra, es el interés apremiante del Estado por garantizar el bienestar general de los menores. Esta protección opera en muchos casos, cuando el padre y la madre no pueden proteger y satisfacer las necesidades de sus hijos menores de edad. La ley reenfoca la política pública del Estado respecto al maltrato de menores, reconociendo como consideración prevaleciente el mejor bienestar del menor y que el derecho a la unidad familiar está limitado por el derecho que tienen éstos a ser protegidos del maltrato y la negligencia. Del mismo modo se disponen criterios claros y precisos para eximir al Estado en determinadas circunstancias de ejercer esfuerzos razonables para preservar la integridad familiar. Se incorporan, además, disposiciones para regir y agilizar los procesos administrativos y judiciales. 
La Ley 342, supra, aplica a aquellos casos en los cuales el Departamento de la Familia solicita la privación, *602 restricción o suspensión de la patria potestad o custodia dentro de los procedimientos incoados para amparar a un menor víctima de maltrato o negligencia. Véase, Art. 45 de la Ley 342, supra. La política pública y los principios establecidos en este estatuto son de aplicación a los casos de custodia donde haya sospecha de maltrato o negligencia e intervenga activamente el Departamento de la Familia. Véase, Pena v. Pena,_D.P.R._(2000), 2000 J.T.S. 200, a la pág. 574, opinión de 15 de diciembre de 2000.
En cuanto a la posibilidad de que surja una reclamación judicial como resultado de actuaciones realizadas al amparo de dicho estatuto, la ley dispone en su Artículo 11, 8 L.P.R.A. §441h, lo siguiente:

“Cualquier persona, funcionario o institución de las obligadas a suministrar información sobre situaciones de maltrato, maltrato institucional, maltrato por negligencia y/o maltrato por negligencia institucional hacia menores, y toda persona que voluntariamente y de buena fe participe en cualquier acto de los requeridos o dispuestos en este capítulo, tendrá inmunidad contra cualquier acción civil o criminal que pudiera ser promovida a consecuencia de dicho acto. ”

La ley confiere a los Tribunales de Primera Instancia jurisdicción concurrente en los casos de emergencia donde esté envuelta la protección a un menor que haya sido víctima de maltrato, según lo define la propia ley. El técnico o el trabajador social del Departamento de la Familia comparecerá y declarará ante un Juez bajo juramento, en forma breve y sencilla, mediante un formulario preparado por la Oficina de Administración de Tribunales indicativo y demostrativo de que la seguridad y bienestar del menor peligra si no se toma acción inmediata para su protección. Para ello se requerirá la comparecencia del padre, madre, persona responsable por el bienestar del menor o de la persona contra quien se radique una querella. El juez, contando con la comparecencia del que ostente la custodia del menor, tomará la determinación que considere más adecuada para el mejor interés del menor, incluyendo una orden disponiendo que “inmediatamente se ponga al menor bajo la custodia del Departamento”. No obstante, puede, bajo circunstancias especiales, tomarla sin su comparecencia. 8 L.P.R.A. §443.
Posterior a esta medida provisional, el tribunal celebrará una vista en la que el Departamento de la Familia informará al tribunal los esfuerzos razonables que se han realizado para preservar la unidad familiar. En dicho proceso se le garantizará el debido proceso de ley a quien tenga la custodia del menor o a la parte demandada. 8 L.P.R.A. §443c - 443d.
Una lectura minuciosa de lo antes transcrito nos demuestra que el estatuto intenta proteger a cualquier funcionario que promueva una acción bajo la ley, otorgándole inmunidad contra cualquier reclamación que surja como consecuencia de la misma.
Aun reconociendo que los funcionarios del Estado tienen inmunidad bajo el estatuto, la misma no es extensible al Estado. Veamos.
III
En el caso que nos ocupa, se trata de una reclamación por las alegadas actuaciones negligentes de funcionarios del Estado al privar a los apelantes de la custodia de su hija menor de edad, de conformidad a lo establecido en el Art. 1803 del Código Civil, 31 L.P.R.A. §5142. Dicho precepto, al igual que su contraparte, el Art. 1802 del Código Civil, 31 L.P.R.A. §5141, incorpora la responsabilidad basada en culpa. Se trata, según ha observado el Tribunal Supremo de Puerto Rico, de un concepto amplio que incluye actuaciones negligentes e intencionales; tan abarcador como pueda serlo la propia conducta humana que pretende reglamentar. Pérez v. Criado Amunategui,_D.P.R._(2000), 2000 J.T.S. 105, opinión de 19 de junio de 2000; Toro Aponte v. Estado Libre Asociado, 142 D.P.R. 464 (1997); Reyes v. Sucn. Sánchez Soto, 98 D.P.R. 305, 310 (1970).
La Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como Ley de Reclamaciones y *603 Demandas Contra el Estado, 32 L.P.R.A. §3077 et seq., constituye una renuncia amplia, pero condicionada por parte del Estado a la protección que le bríndala inmunidad del soberano. El Art. 2 de la Ley 104, 32 L.P.R.A. §3077, autoriza, entre otras, la presentación contra el Estado de acciones de daños y perjuicios a la persona o a la propiedad “causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia". García v. Estado Libre Asociado, 146 D.P.R. 725 (1998).
El Tribunal Supremo de Puerto Rico ha aclarado que para que un demandante pueda prevalecer en un pleito por daños y perjuicios contra el Estado por actuaciones de un funcionario debe establecer: (1) que la persona que le causó el daño era agente, funcionario o empleado del Estado y que estaba actuando en su capacidad oficial al momento de causar el daño; (2) que el funcionario, agente o empleado actuó dentro del marco de su función; (3) que la actuación del empleado del Estado fue negligente y no intencional, y (4) que existe una relación causal entre la conducta culposa y el daño producido. Leyva et al. v. Aristud et al., 132 D.P.R. 489, 510 (1993). Véase además, Art. 6(d) de la Ley Núm. 104, supra, 32 L.P.R.A. §3801(d).
El demandante tiene la opción de demandar directamente al empleado, al Estado o, en forma alternativa, a las dos partes, García v. Estado Libre Asociado, supra; Vázquez Negrón v. E.L.A., 113 D.P.R. 148 (1982). La inmunidad que pueda asistir al empleado particular respecto a la actuación que da lugar a la demanda no beneficia al Estado. Romero Arroyo v. E.L.A., 127 D.P.R. 724, 746 (1991).
No obstante lo anterior, el Art. 6 de la Ley Núm. 104, supra, aclara que no están autorizadas las acciones de daños y perjuicios contra el Estado por acciones u omisiones de un funcionario cuando, inter alia, dichas actuaciones son “constitutiv[as] de acometimiento, agresión u otro delito contra la persona, ...”. 32 L.P.R.A. §3081. Véase, Baéz Vega v. Estado Libre Asociado, 87 D.P.R. 67 (1963).
En el pleito de autos, el Estado adujo que no procedía la reclamación de los apelantes en su contra a tenor con la inmunidad establecida en las leyes discutidas anteriormente. No estamos de acuerdo.
Cierto es que la Ley 342, supra, le confiere inmunidad a los funcionarios del Estado cuando éstos actúan bajo el palio del estatuto. Sin embargo, nada en la referida ley dispone que no se pueda reclamar al Estado cuando dichos funcionarios o empleados actúen negligentemente en el descargo de sus funciones oficiales.
Por otro lado, la Ley 104, supra, claramente autoriza a que se presente una reclamación por daños y perjuicios contra el Estado por las actuaciones culposas o negligentes de sus funcionarios, empleados o persona actuando en capacidad oficial.
En el caso que nos ocupa, los apelantes alegaron que el Estado, a través de sus funcionarios del Departamento de la Familia, le ocasionaron daños al privarlos de la custodia de su hija ilegalmente. Ello en virtud de la determinación que hiciera al respecto el foro de instancia en la vista de ratificación de custodia.
En Piñeiro Manzano v. E.L.A., 102 D.P.R. 795 (1974), el Tribunal Supremo, en reconsideración de su dictamen anterior, examinó los límites de la inmunidad conferida al Estado Libre Asociado por los actos u omisiones de sus funcionarios o empleados en el ejercicio de una función de carácter discrecional. Específicamente, el Tribunal Supremo evaluó si la función de remover a un menor de un hogar de crianza, era una discrecional, expresamente excluida del ámbito de la Ley 104, supra. El Tribunal Supremo resolvió que la función de remover la custodia de un menor era una función discrecional. Sin embargo, no es una función discrecional que afecte los programas básicos de gobierno o las normas básicas de política pública. Por el contrario, concluyó que dicha función era una que requería un ejercicio de discreción rutinario. Siendo ello así, el Tribunal Supremo concluyó que la función de remover a un menor no estaba protegida por la exclusión establecida en la Ley 104, supra. Es decir, si en la función de remover a un menor, un empleado del Estado *604 incurriera en actos negligentes u omisiones, la parte que sufriera daños a consecuencia de ello tendría una causa de acción contra el Estado, a quien no le cobija la inmunidad estatuida.
En virtud de lo expuesto anteriormente, resolvemos que los apelantes tienen una causa de acción por daños y perjuicios contra el E.L.A. En su día, los apelantes tendrán que probar la alegada negligencia incurrida por los funcionarios del Departamento de la Familia y los daños sufridos a consecuencia de ello.
IV
El. Tribunal de Primera Instancia desestimó la demanda incoada por los apelantes, acogiendo los argumentos esbozados en la solicitud de sentencia sumaria presentada por el E.L.A. La misma se fundamentó principalmente en la doctrina reiterada en Jiménez Alvarez v. Silen Maldonado, 131 D.P.R. 91 (1992), a los efectos de que en nuestra jurisdicción no existe per se la acción de daños y perjuicios como consecuencia de un pleito civil. Concluyó el tribunal de instancia que aun cuando los apelantes se vieron sometidos a un proceso civil a instancia del Estado, en el mismo no medió malicia. Además, indicó en su sentencia que no se daban los requisitos para tratar el caso como uno de acción de daños y peijuicios por persecución maliciosa. Erró el foro apelado.
En atención al asunto que nos ocupa, el Tribunal Supremo ha reiterado en numerosas ocasiones la doctrina general de que en nuestra jurisdicción no se reconoce la existencia de la acción de daños y perjuicios como consecuencia de un pleito civil. Véase, Jiménez Alvarez v. Sile Maldonado, supra; Commonwealth Loan Corp. v. Garcia, 96 D.P.R. 773 (1968); Berrios v. International Gen. Electric, 88 D.P.R. 109 (1963); Pereira v. Hernández, 83 D.P.R. 160, (1961); Suárez v. Suárez, 47 D.P.R. 97 (1934); López de Tord & Zayas v. Molina, 38 D.P.R. 823 (1928).
De igual manera, se ha reiterado que la sanción judicial por el uso indebido de los procedimientos legales se traduce en la condena en costas y honorarios de abogado dentro del mismo pleito. De proceder, también se impondrán intereses legales por temeridad. Véase, Jiménez Alvarez v. Silen Maldonado, supra; Pereira v. Hernández, supra.
Para que pueda instituirse con éxito un pleito de esta naturaleza, el Tribunal Supremo de Puerto Rico ha esbozado los siguientes requisitos:

“1. Que una acción civil fue iniciada o un proceso criminal instituido por el demandado o a instar de éste.

2. Que la acción, o la causa, termina de modo favorable para el demandante.

3. Que fue requerida maliciosamente y sin que existiera causa probable.

4. Que el demandante sufrió daños y perjuicios como consecuencia de ello. Fonseca v. Oyóla, 77 D.P.R. 528 (1954).’’
Cabe señalar que la demanda incoada por los apelantes no surgió como consecuencia de un procedimiento civil seguido contra ellos por el Estado. Los apelantes basaron sus reclamaciones en daños sufridos por alegadas actuaciones culposas o negligentes del Estado, a través de sus funcionarios.
El procedimiento iniciado y utilizado por el Estado para privar a los apelantes de la custodia de su hija, Monique Pacheco García, es uno sui géneris de conformidad a la Ley 342, supra. A tenor con dicho estatuto, se establece un procedimiento expedito, sencillo y provisional, para que un funcionario pueda obtener una orden de un juez, de manera que se pueda remover a un menor de su hogar en casos de alegada emergencia. Posteriormente, se celebrará una vista para ratificar la custodia.
*605 El procedimiento descrito no constituye un pleito civil per se. Ciertamente, no se configura la acción civil a la cual se alude en la jurisprudencia citada por el tribunal apelado para fundamentar su determinación de desestimar la demanda incoada por los apelantes.
En el procedimiento en cuestión, no existió el trámite procesal que usualmente se observa en los pleitos civiles. Se trata de un procedimiento especial con unas características particulares que ha de ser utilizado en una situación dada.
Por entenderlo así, resolvemos que la jurisprudencia interpretativa aludida en la sentencia apelada no es de aplicación al caso de marras. Actuó incorrectamente el tribunal apelado al desestimar con peijuicio la demanda incoada por los apelantes.
Habida cuenta de lo precedentemente expuesto, determinamos que los apelantes tienen una causa de acción contra el E.L.A. que el tribunal de instancia deberá, en su día, atender en sus méritos.
Revocamos la sentencia apelada y devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos de conformidad con lo aquí dispuesto.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Leda. Aida I. Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 2
1. Exposición de Motivos de la Ley 342 del 16 de diciembre de 1999.
2. Piñeiro Manzano v. E.L.A., 101 D.P.R. 113 (1973).