ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| JAMES MALCOLM UGOBONO DÍAZ<br><br>Demandante-Apelante<br><br>Vs.<br><br>VANESSA UGOBONO DÍAZ Y OTROS<br><br>Demandados-Apelados | KLAN202301073 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm. SJ2023CV03370<br><br>Sala: 805<br><br>SOBRE: DIFAMACIÓN; DAÑOS Y PERJUICIOS |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de mayo de 2024.

Comparece la parte apelante, el señor James Malcolm Ugobono Díaz, (en adelante, el apelante o señor Ugobono Díaz) para solicitarnos que se revise y revoque la *Sentencia* emitida el 30 de octubre de 2023 y notificada el 2 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la cual declaró *Ha Lugar* a la *Moción Solicitando Desestimación* presentada por la apelada. La señora Vanessa Ugobono Díaz y el señor Diego Ugobono Díaz (en adelante, los Hermanos Ugobono Díaz o apelados) presentaron su alegato de oposición el 21 de diciembre de 2023.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, *confirmamos* la *Sentencia* apelada.

Número Identificador

SEN2024 _____

**I**

El 21 de abril de 2023 el señor Ugobono Díaz presentó una demanda por daños y perjuicios y difamación en contra de su hermana, la señora Vanessa Ugobono Díaz. En esencia, su reclamo estuvo basado en que la señora Ugobono Díaz les había manifestado a dos oficiales del orden público que "*tenía miedo que el demandante desconectara y asesinara a su mamá*".[1] Posteriormente, el señor Ugobono Díaz enmendó la demanda y acumuló a su hermano el señor Diego Ugobono Díaz. En adición, acumuló una nueva causa de acción en contra de los hermanos Ugobono Díaz.[2] En la enmienda, alegó tener una causa de acción por persecución maliciosa. Adujo que la señora Ugobono Díaz le había verbalizado a un tercero, el señor Juan Zalduondo, que el apelante "*le ha robado a su madre*".

También arguyó que la persecución maliciosa se configuró toda vez que los apelados solicitaron una orden de protección a favor de su madre, al amparo de la Ley Núm. 121-2019, también conocida como "Carta de Derechos y la política Pública del Gobierno a favor de los adultos mayores", 8 LPRA sec. 1511, para evitar las visitas familiares. No obstante, el Tribunal de Primera Instancia emitió un estado provisional de derecho al amparo de la Ley Núm. 140- 1974, 32 LPRA sec. 2817 para mantener el estado de las visitas familiares con la señora Rosalía Díaz Sinko, madre de todas las partes involucradas en el presente recurso.

El 31 de agosto de 2023, la parte demandada-apelada presentó una *Moción de Desestimación* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. R.10.2 (5).[3] En síntesis, los hermanos Ugobono Díaz relacionaron los múltiples procesos

---

[1] Apéndice I del Recurso de Apelación, págs. 1-2.
[2] Apéndice X del Recurso de Apelación, págs. 16-20.
[3] Apéndice XXII del Recurso de Apelación, págs. 44-59.

judiciales que el apelante ha instado en su contra y la pobre relación familiar que existe entre ambas partes. Adicionalmente, arguyeron que las expresiones realizadas por la señora Ugobono Díaz eran una opinión vertida por ella, por lo que no podían considerarse una expresión difamatoria. Toda vez que dichas expresiones se le habían realizado a un funcionario del orden público, que estaban apoyados en causa probable y que existía una investigación en curso. A su vez, sobre la causa de acción de persecución maliciosa, adujeron que esta no se configuró de acuerdo con los requisitos de nuestro ordenamiento, toda vez que existía causa probable para que la señora Ugobono Díaz solicitara una orden de protección en contra del apelante.

El apelante presentó su *Oposición a Moción Solicitando Desestimación* el 5 de octubre de 2023.[4] En síntesis, adujo que no procedía desestimar su reclamación, toda vez que las imputaciones hechas hacia su persona configuraron un patrón de persecución maliciosa. También argumentó que la demanda enmendada satisfacía los elementos de la Regla 6.1 de Procedimiento Civil, *supra* y que dichas alegaciones eran suficientes en derecho para sostener la causa de acción.

Posteriormente, el 9 de octubre de 2023, los hermanos Ugobono Díaz presentaron una *Moción Informativa.* En la misma notificaron al Tribunal que la señora Díaz Sinko había fallecido.[5] El 10 de octubre de 2023 el apelante presentó una *Moción en torno a 'Moción informativa'.*[6] Sostuvo que dicha moción estaba plasmada de información incorrecta. No obstante, el 30 de octubre de 2023 y notificada el 2 de noviembre del mismo año, el Foro a *quo* emitió

---

[4] Apéndice XXVIII del Recurso de Apelación, págs. 66-80.
[5] Apéndice XXIX del Recurso de Apelación, págs. 81-84.
[6] Apéndice XXX del Recurso de Apelación, págs. 85-88.

*Sentencia* donde declaró *Ha Lugar* la *Moción de Desestimación* presentada por los apelados.[7]

Inconforme con el dictamen del Tribunal de Primera Instancia, el 29 de noviembre de 2023, la parte apelante presentó el recurso de Apelación ante nos, donde imputó al Tribunal de Primera Instancia los siguientes señalamientos de error:

A. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE SAN JUAN EN UN CRASO ABUSO DE DISCRESIÓN [sic] Y DETERMINAR QUE LA DEMANDA NO TIENE ALEGACIONES SUFICIENTES QUE DEMUESTREN LA CONCESIÓN DE UN REMEDIO, EN UNA EQUIVOCADA INTERPRETACIÓN Y APLICACIÓN DE LA NORMA PROSECAL [sic] Y SUSTANTIVA.

B. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE SAN JUAN, AL DETERMINAR QUE NO SE CONFIGURA UNA ACCIÓN POR DIFAMACIÓN, AL HABER APLICADO INCORRECTAMENTE LA NORMA YA QUE EL CASO DE AUTOS TRATA DE PERSONA PRIVADA, POR LO QUE EL ESTANDAR DE NEGIGENCIA [sic] EN LA PUBLICACIÓN.

C. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE SAN JUAN, AL DETERMINAR QUE NO SE CONFIGURA UNA ACCIÓN POR DIFAMACIÓN, AL HABER APLICADO INCORRECTAMENTE LA NORMA DE PRIVILEGIO RESTRINGUIDO [sic].

D. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE SAN JUAN, AL DETERMINAR QUE LA OPINIÓN DE UNA PERSONA NO PUEDE GENERAR UNA CAUSA DE ACCIÓN POR DIFAMACIÓN.

E. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE SAN JUAN, AL DETERMINAR QUE EL DEMANDANTE-APELANTE NO HA DEMOSTRADO QUE LAS EXPERSIONES [sic] DIFAMATORIAS LE CAUSARON DAÑOS Y/O PERJUICIOS AL DEMANDANTE-APELANTE, SIENDO TAL DETERMINACIÓN EN CONTRAVERSIÓN [sic] A LA REGLA 6.1 DE PROCEDIMIENTO CIVIL.

F. ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA SALA SUPERIOR DE SAN JUAN, AL DETERMINAR QUE NO SE CONFIGURA UNA ACCIÓN POR PERSECUCIÓN MALISIOSA [sic] PORQUE AL HABER EXPEDIDO UNA ORDEN DE PROTECCIÓN, EXISTÍA UNA CAUSA PROBABLE QUE IMPIDE LA PERSECUCIÓN MALICIOSA, CONTRARIO A LA NORMA LEGAL VIGENTE.

---

[7] Apéndice XXXIII del Recurso de Apelación, págs. 91-104.

**II**

***-A-***

La Regla 10 de Procedimiento Civil, permite a una parte demandada presentar tres (3) clases de mociones antes de contestar la demanda, estas siendo: (1) una moción de desestimación; (2) una moción para solicitar una exposición más definida; y (3) una moción eliminatoria. 32 LPRA Ap. V, R. 10.2, 10.4 y 10.5 respectivamente. La notificación de alguna de estas mociones interrumpe y altera el término para presentar la alegación responsiva. 32 LPRA Ap. V, R. 10.1; *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043,1065 (2020). No obstante, en aras de evitar dilaciones innecesarias, la parte que presente una moción al amparo de la regla deberá acumular en esta todas las mociones y defensas a las que entienda que tiene derecho y que la regla contempla. 32 LPRA Ap. V, R. 10.7. (Énfasis suplido).

Por su parte, la Regla 10.2 de las de Procedimiento Civil, *supra,* permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la misma regla. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** o (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2 (5). La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo, se entenderán renunciadas, con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7-10.8; *Conde Cruz v. Resto Rodríguez, supra,* pág. 1066. (Énfasis suplido).

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 84 (2023); *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 396 (2022). Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una demanda de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security Police, Inc. v. Dorado*, *supra,* pág. 84; *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

**Para que prevalezca una solicitud de desestimación al amparo de la Regla 10.2, *supra*, el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor**. *Rivera Sanfeliz et al. V. Jta. Dir. Firstbank*, 193 DPR 38, 49 (2015). Así pues, **los foros judiciales deben ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida**. *Eagle Security Police, Inc. v. Dorado, supra,* pág. 84. Asimismo, el Tribunal Supremo de Puerto Rico resolvió que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos. *Comisión v. González Freyre*, 211 DPR 579,614-615 (2023); *Cobra Acquisitions, LLC v. Municipio de Yabucoa, supra*, págs. 400-401.

*-B-*

La Regla 6.1. de las Procedimiento Civil, *supra,* establecen dentro de su texto, que debe cumplirse como se indica:

Una alegación que exponga una solicitud de remedio contendrá:

(1) **una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio**, y

(2) **una solicitud del remedio a que crea tener derecho.** Podrán ser solicitados remedios alternativos o de diversa naturaleza.

Ahora bien, una vez realizada dicha alegación, corresponde a la parte contraria contra la cual se reclama, como lo sería un demandado, presentar una alegación responsiva en la cual admita o niegue las aseveraciones en que descanse la parte contraria o demandante. *Conde Cruz v. Resto Rodríguez, supra,* pág.1063. Es norma reiterada que las alegaciones se interpretarán de manera conjunta y liberalmente a favor de la parte demandante, con el objetivo de hacer justicia.

Insistentemente hemos advertido que "el propósito de las alegaciones es notificar a la parte contraria, a grandes rasgos, de las reclamaciones en su contra para, de este modo, brindarle la oportunidad de comparecer al proceso y defenderse, si es que lo desea". *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020). Por consiguiente, el documento sí debe incluir "un mínimo de detalle que informe sobre los alegados actos lesivos que causaron el alegado perjuicio". Es decir, debe contener un grado suficiente de información sobre las imputaciones de suerte que le permita a la parte demandada entender la sustancia de lo que debe defender. *Id.* pág. 41.

Nótese que las siguientes expresiones del tratadista Rafael Hernández Colón han sido adoptadas por el Tribunal Supremo de Puerto Rico, con la finalidad de que el caso prospere hacia otras etapas del proceso:

La R[egla] 6.1 [...] impone al demandante una obligación relativamente leniente. Un demandante cumple con la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. [...] No obstante, si bien el deber que se le exige al demandante es

bastante liberal y se le requiere brevedad en su exposición, **la alegación debe aún contener la suficiencia fáctica que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta.** El demandante debe alegar hechos suficientes que eleven su reclamación más allá del nivel especulativo y la empujen a través de la línea de lo "concebible" a lo "plausible" R. Hernández Colón, *Derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 287. *León Torres v. Rivera Lebrón, supra*, pág. 41.

### -C-

La protección contra ataques abusivos a la honra y reputación surge del Artículo II, Sec. 8 de la Constitución de Puerto Rico, LPRA, Tomo 1, además de lo provisto por el Art. 1536 de nuestro Código Civil, 31 LPRA sec. 10801, según modificado por la doctrina constitucional federal. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 147 (2013); *Colón, Ramírez v. Televicentro de P.R.*, 175 DPR 690, 705–706, 726 (2009). De esta protección surge la causa de acción de difamación, la cual conlleva la difícil tarea de balancear el alcance de la libertad de expresión y el derecho a la intimidad, ambos valores reconocidos como de alta jerarquía y de interés público en nuestro ordenamiento jurídico. *Giménez Álvarez v. Silén Maldonado*, 131 DPR 91, 97–98 (1992).

La Ley Para autorizar Pleitos Civiles por Daños y Perjuicios Ocasionados por Libelo y Calumnia del 19 de febrero de 1902, 32 LPRA sec. 3141-3149, es extensiva a las acciones de daños y perjuicios por difamación. En nuestro sistema de derecho, se ha reconocido la acción de daños y perjuicios por difamación. Ésta es una acción torticera genérica que incluye tanto el libelo como la calumnia. *Ojeda v. El Vocero de Puerto Rico*, 137 DPR 315,326-327 (1994).

La precitada ley, en su Sección 3 define **calumnia** como "la publicación falsa o ilegal, que no sea un libelo, y que impute a una persona la comisión de un hecho constitutivo de delito, o tienda directamente a perjudicarle con relación a su oficina, profesión,

comercio o negocios o que, como consecuencia natural, le cause daños reales y efectivos". 32 LPRA sec. 3143.

Según la jurisprudencia del Tribunal Supremo de Puerto Rico, "[l]a difamación en el ámbito civil se ha definido como "**desacreditar a una persona publicando cosas contra su reputación**"". *Pérez Rosado v. El Vocero*, 149 DPR 427, 441 (1999). **La calumnia, por su parte, se configura con la mera expresión oral difamatoria**. *Ojeda v. el Vocero de Puerto Rico, supra*, pág. 326. A su vez, destacamos que "**una opinión es la expresión sobre cuestiones de interés público que no contienen una connotación fáctica que sea susceptible de ser probada como falsa**". *Colón Perez v. Televicentro de PR*, 175 DPR 690,719 (2009); *Asoc. Med. Podiatrica v. Romero*, 157 DPR 240, 246 (2002); *Soc. de Gananciales v. López*, 116 DPR 112 (1985). (Énfasis suplido).

En adición a lo anterior, nuestro máximo foro judicial aclaró que:

> [p]osteriormente, decidimos *Ojeda v. El Vocero de P.R., supra,* (citas omitidas) en el cual, si bien reiteramos la existencia en nuestra jurisdicción de dos causas de acción en daños por difamación, es decir, la establecida en la Ley de 1902 y la derivada del Artículo [1536] del Código Civil, también expresamos que "dicha dicotomía parece ser ya innecesaria, habida cuenta [de] que [ya] jurisprudencialmente se han dejado sin efecto [la mayoría de las] disposiciones de la Ley de Libelo y Calumnia" y las demás son innecesarias. *Colón Pérez v. Televicentro de PR*, 175 DPR 690,712-713 (2009).

Así las cosas, nuestro estado de derecho reconoce una causa de acción a la persona perjudicada por una difamación o una calumnia. A estos efectos, el Tribunal Supremo de Puerto Rico concluyó que "**[l]a acción para exigir la responsabilidad civil por injuria y calumnia es lo mismo que la acción de daños y perjuicios por difamación**". *Ojeda v. El Vocero de Puerto Rico, supra*, pág. 326. Nuestro más alto foro ha establecido que "cuando se efectúan expresiones o publicaciones difamatorias que producen daños, **sin que medie malicia o alguno de los elementos para que proceda**

**la acción estatutaria de los daños por difamación, siempre procederá una acción de daños y perjuicios bajo el Artículo [1536] del Código Civil,** *supra,* **teniendo que probarse todos los elementos indispensables de dicha causa de acción**". *Ojeda v. El Vocero de Puerto Rico, supra,* pág. 326, citando a *Romany v. El Mundo, Inc.*, 89 DPR 604, 618 (1963). (Énfasis suplido).

En síntesis, para una causa de acción por calumnia, el estándar utilizado por el Tribunal Supremo de Puerto Rico el interesado tiene que probar: **(1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha expresión difamatoria;[8] (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente**, y (4) si el demandante es una figura pública, en vez, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falso o con grave menosprecio de si era falso o no. *Garib Bazain v. Clavell*, 135 DPR 475, 482 (1994). (Énfasis suplido).

### -D-

Aunque en nuestro ordenamiento jurídico se ha elaborado sobre la "doctrina del privilegio restringido", esta tuvo su base inicial en la Ley de Libelo y Calumnia, *supra.* Expresamente la Sección 4. dispone lo siguiente:

> **No se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en un procedimiento legislativo, judicial, u otro procedimiento cualquiera autorizado por la Ley**. No se presumirá que es maliciosa la publicación que se hace: Primero: En el propio desempeño de un cargo oficial; Segundo: En un informe justo y verdadero, de un procedimiento judicial, legislativo u oficial, u otro procedimiento cualquiera, u de algo dicho en el curso de dichos procedimientos; **Tercero: A un funcionario oficial, apoyada en causa probable, con la intención**

---

[8] El Tribunal Supremo de Puerto Rico ha definido los daños reales indemnizables de la siguiente manera: "Para que ocurra un **daño real indemnizable** según el Art. [1536] (antes 1802) del Código Civil, 31 LPRA sec. [10801] (antes 5141), tienen que concurrir los elementos esenciales siguientes: (1) que el daño cause una lesión, pérdida o menoscabo; (2) que el daño recaiga sobre bienes o intereses jurídicos de una persona; (3) que el daño sea resarcible de alguna forma. *Soto Cabral v. ELA*, 138 DPR 298, 312 (1995).

**de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular**. 32 LPRA sec. 3144. (Énfasis suplido).

El Tribunal Supremo de Puerto Rico ha expresado que "[u]n ciudadano que sospeche razonablemente que se ha cometido o que se piensa cometer un crimen tiene el privilegio, para su protección y la de la sociedad, de comunicárselo a las autoridades correspondientes o a quien él crea de buena fe que pueda tomar acción correctiva. **La comunicación puede ser falsa, pero el privilegio persiste**". *Cortés Portalatín v. Hau Colón,* 103 DPR 734, 739 (1975) citando a *Quiñones v. J. T. Silva Banking and Commercial Co.,* 16 DPR 696 (1910). Asimismo, "[s]e pierde la inmunidad si la comunicación se entabla con quien no existe razón para creer que puede proteger el interés del actor o de la comunidad, según sea el caso; o si el actor le imparte publicidad excesiva al asunto; o si el actor se mueve por motivos impropios". *Cortés Portalatín v. Hau Colón, supra,* pág. 739*; Romany v. El Mundo, Inc., supra.*; (citas omitidas). "**El hecho de que otras personas escuchen o lean incidentalmente una comunicación hecha de modo razonable no anula el privilegio**". *Cortés Portalatín v. Hau Colón, supra*, pág. 739.

*-E-*

En nuestro ordenamiento no existe una acción de daños y perjuicios como consecuencia de acciones civiles. Sin embargo, a manera de excepción, se ha reconocido la procedencia de una acción de daños y perjuicios por persecución maliciosa cuando los hechos del caso revelan circunstancias extremas en que se acosa al demandante con pleitos injustificados e instituidos maliciosamente. La persecución maliciosa o uso injustificado de los procedimientos legales constituye la presentación maliciosa y sin causa de acción probable, de un proceso criminal o civil contra una persona, que produce daños a ésta. H.M. Brau del Toro, *Los daños y perjuicios*

*extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 109. Así pues, "siendo la malicia un elemento esencial de la persecución maliciosa, en nuestro ordenamiento se le cataloga como una acción en daños y perjuicios causados por conducta torticera intencional bajo el Artículo [1536] del Código Civil", *supra. García v. ELA*, 163 DPR 800, 810 (2005).

Para que pueda instituirse con éxito un pleito de esta naturaleza deben concurrir los siguientes requisitos: **(1) que una acción civil fue iniciada, o un proceso criminal instituido, por el demandado o a instancia de éste; (2) que la acción, o la causa, terminó de modo favorable para el demandante; (3) que fue seguida maliciosamente y sin que existiera causa probable, y (4) que el demandante sufrió daños y perjuicios como consecuencia de ello.** *García v. ELA,* 163 DPR 800,810 (2005); *Gímenez Álvarez v. Silen Maldonado*, 131 DPR 91, 96 (1992).

Así las cosas, **"el mero hecho de informar a las autoridades la comisión de un delito no es suficiente para imponer responsabilidad, <u>sino que debe demostrarse que el demandado instigó activa y maliciosamente la iniciación del proceso y que no fueron las autoridades quienes a base de su propia evaluación de los hechos decidieron procesar al demandante</u>**". *Raldiris v. Levitt & Sons of PR, Inc.*, 103 DPR 778, 781-782 (1975). De igual forma, tampoco el suministrar información a las autoridades del Estado constituye, de por sí, la instigación que se requiere como elemento esencial de esta causa de acción. *Parrilla v. Ranger American of PR*, 133 DPR 263, 273 (1993). (Énfasis suplido).

### III.

El señor Ugobono Díaz expone seis (6) señalamientos de error de los cuales discutiremos primeramente de manera conjunta los identificados con las letras A y E. Posteriormente, procederemos con

los errores identificados con las letras B, C y D. Finalmente, atenderemos el último error bajo la letra F.

Arguye el apelante que incidió el Foro de Instancia al desestimar su reclamación por no tener derecho a la concesión de un remedio al amparo de la Regla 10.2(5), *supra*, toda vez que las alegaciones no cumplían con la Regla 6.1 de Procedimiento Civil, *supra. No le asiste la razón.*

Según esbozado previamente, el Tribunal Supremo de Puerto Rico ha sido enfático en la interpretación de las Reglas de Procedimiento Civil, *supra*, sosteniendo que, una alegación que exponga una solicitud de remedio deberá contener una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio. Sostiene el apelante que el foro primario incidió al desestimar la demanda al amparo de la Regla 10.2(5) de las de Procedimiento Civil, *supra*, toda vez que el foro primario tenía que interpretar dichas alegaciones de la forma más favorable hacia el apelante.

Examinamos las alegaciones de la demanda de la manera más favorable hacia el apelante. Veamos:

1. El 20 de abril de 2023 el demandante llegó a la Urbanización Santa María Calle Mimosa #155 donde se encuentra localizada la residencia de su madre, quien se encuentra postrada en una cama, con varias máquinas colocadas en su cuerpo.

2. Que al llegar a la residencia de su madre, Rosalía Magadalena Díaz Sinko, le fue negado el acceso, por lo que llamó a la policía.

3. Al lugar de los hechos llegó la Policía Municipal de San Juan, del Cuartel de Puerto Nuevo, y el Agente L. González, Placa 2265 tomó la querella asignándole el número 2023-B03-4654.

4. Cuando el demandante logró acceso a la residencia de su madre y poder verla, la demandada se encontraba hablando con otros dos Agentes Municipales y en voz alta informa que ella "tenía miedo de que el demandante desconectara y asesinara a su mamá", siendo falso con conocimiento de su falsedad e informándolo como si fuera verídico. Por ello, la

parte demandante ha sido objeto de declaraciones difamatorias de la demandada.

5. Recientemente, la co-demandada ha realizado expresiones difamatorias alegando que el demandante le ha "robado a su madre", información falsa e informada por la demandada con conocimiento de su falsedad e informándolo como si fuera verídico al Sr. Juan Zalduondo. Éste último se acercó al demandante para preguntarle, sufriendo el demandante por ello y teniendo que informar la falsedad de ello y corregir que quien único se ha apropiado y usurpado pertenencias de su madre Rosalía es la co-demandada Vanessa, que quien para tratar de desviar la atención y ante el hecho de que el demandante ha comenzado los procedimientos judiciales para desenmascarar la verdad ha empezado la campaña difamatoria.

6. Por otra parte, el 20 de abril de 2023 los co-demandados hermanos presentaron una Petición de Orden de Protección, alegadamente en favor de Doña Rosalía, al amparo de la Ley 121, Ley de Carta de Derecho y la Política Pública del Gobierno a Favor de los Adultos Mayores, Vanessa Ugobono Díaz y Diego J. Ugobono Díaz v. James M. Ugobono Díaz, Caso Núm. SJL121-2023- 3019, y luego de inducir a error, obtuvieron una Orden de Protección Ex Parte, la cual conllevaba repercusiones criminales por incumplimiento.

7. El 31 de mayo de 2023 se llevó a cabo la Vista de Orden Permanente, y luego de desfilada la prueba, el Tribunal Municipal de San Juan declaró No ha Lugar la Orden de Protección por no darse los elementos para su expedición. El Tribunal expidió un estado provisional de derecho, al amparo de la ley 140, de manera que los co-demandados hermanos no pudieran impedir las visitas del demandante a ver a su madre.

8. La radicación de la Petición de Orden Ex Parte, fue en la tarde del 20 de abril de 2023, luego de que la co-demandada Vanessa fuera emplazada personalmente para caso Ex Parte James M. Ugobono Díaz, Civil Núm. SJ2023RF00415, sobre declaración de incapacidad y nombramiento de tutor, para con su madre.

**[A. Primera causa de acción: Difamación por la codemandada Vanessa Ugobono Diaz]**

9. La presente causa de acción se radica al amparo de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. Artículo II, Sección 8, así como al amparo del Código Civil de Puerto Rico de 2020, 31 L.P.R.A., y la Ley de Libelo y Calumnia de Puerto Rico, del 19 de febrero de 1902, 32 L.P.R.A. Secciones 3142 et seq., y/o equidad.

10. Los actos intencionales de la co-demandada Vanessa configuran la causa de acción, siendo la información provista falsa, con conocimiento de su falsedad, informándolos como si fuera verídico y con la intención de causar daños al demandante.

[B. **Segunda Causa de acción**: **Persecución Malisiosa [sic]
por los codemandados Vanessa y Diego J. Ugobono Díaz**]

1. El Tribunal Supremo en Bonet Cardona v. Holahan, y
otros, 181 D.P.R. __ (2011) nos recuerda que:
Reiteradamente hemos expresado que en nuestra
jurisdicción no existe per se la acción civil de daños y
perjuicios como resultado de un pleito civil. García v. E.L.A.,
163 D.P.R. 800 (2005); Giménez Álvarez v. Silén Maldonado,
131 D.P.R. 91, 96-97 (1992); Commonwealth Loan Corp. v.
García, 96 D.P.R. 773 (1968); Berríos v. International Gen.
Electric, 88 D.P.R. 109 (1963); Pereira v. Hernández, 83
D.P.R. 160 (1961); Suárez v. Suárez, 47 D.P.R. 97 (1934);
López de Tord & Zayas v. Molina, 38 D.P.R. 823 (1928). Sólo
como excepción a esta norma, hemos reconocido una causa
de acción por persecución maliciosa cuando se presentan
hechos extremos en los que se acosa al demandante con
pleitos injustificados e instados maliciosamente. *Giménez
Álvarez v. Silén Maldonado*, *supra*; *Fonseca v. Oyola*, 77
D.P.R. 525 (1954). "Siendo la malicia un elemento esencial
de la persecución maliciosa, en nuestro ordenamiento se le
cataloga como una acción en daños y perjuicios causados
por conducta torticera intencional . . ." *García v. E.L.A.*,
*supra*, pág. 810.

2. En Giménez Álvarez v. Silén Maldonado, 131 D.P.R. 91
(1992), el Tribunal Supremo nos enumera los requisitos para
la causa de acción: Para que pueda instituirse con éxito un
pleito de daños y perjuicios por persecución maliciosa deben
concurrir los requisitos siguientes: (1) que una acción civil
haya sido iniciada, o un proceso criminal instituido, por el
demandado o a instancia de éste; (2) que la acción, o la
causa, haya terminado de modo favorable para el
demandante; (3) que haya sido seguida maliciosamente y sin
que existiera causa probable, y (4) que el demandante haya
sufrido daños y perjuicios como consecuencia de ello.

Como observamos, de una lectura integral de las alegaciones
y, aun tomando como ciertas todas las alegaciones del apelante,
para efectos de rebatir una moción al amparo de la Regla 10.2 (5),
*supra,* en los hechos uno (1) al ocho (8), **no se desprende ninguna
reclamación que amerite la concesión de un remedio, pues lo
que permea son alegaciones explicativas**. Por otro lado, la
alegación número nueve (9), y el diez (10), de la primera causa de
acción, y las alegaciones uno (1) y dos (2) de la segunda causa de
acción son conclusiones de derecho y citas legales. Según el
estándar exigido por Regla 6.1 de Procedimiento Civil, *supra,* de las
alegaciones precitadas y tomándolas de la forma más favorable para
el apelante, no se desprende que la parte apelante tenga derecho a

un remedio, ni exponen una solicitud del remedio al que el apelante cree tener derecho.

Por otro lado, según los criterios establecidos por la jurisprudencia precitada sobre las causas de acción de difamación, libelo y calumnia, el demandante debe cumplir con los estándares precitados para demostrar su causa. Es decir, que la información o expresión vertida es falsa y difamatoria, y que por causa de su publicación sufrió **daños reales** según lo establecido por el Tribunal Supremo de Puerto Rico.[9] *Porto y Siurano v. Bently P.R., supra*, pág. 345. De una lectura de las alegaciones previamente mencionadas de la Demanda Enmendada no se desprenden los daños reales que alegadamente sufrió el apelante. Solo existe una reclamación general sobre la cantidad monetaria que el apelante reclama, más no se detallan los daños reales sufridos. *No se cometieron los errores señalados.*

Procedemos a discutir los señalamientos de error B, C y D. Sostiene el apelante que erró el Tribunal de Primera Instancia al determinar que una opinión no configura una acción por difamación siendo el apelante una persona privada. También señala el apelante que incidió el foro primario al aplicar incorrectamente la norma de privilegio restringido. *No le asiste la razón.*

Según sostuvo el apelante, que la codemandada-apelada, señora Ugobono Díaz ha cometido actos de difamación en su contra, y que, a su entender, fueron satisfechos los elementos necesarios para una causa de acción por difamación. Veamos.

Según las alegaciones del apelante, la señora Ugobono Díaz realizó las siguientes expresiones:

---

[9] Los daños reales indemnizables que están cobijados sobre la **doctrina de difamación** requieren cumplir con los siguientes elementos: según el Art. [1536] (antes 1802) del Código Civil, 31 LPRA sec. [10801] (antes 5141), tienen que concurrir los elementos esenciales siguientes: **(1) que el daño cause una lesión, pérdida o menoscabo; (2) que el daño recaiga sobre bienes o intereses jurídicos de una persona; (3) que el daño sea resarcible de alguna forma.** *Soto Cabral v. ELA*, 138 DPR 298, 312 (1995). (Énfasis suplido).

[…]

4. Cuando el demandante logró acceso a la residencia de su madre y poder verla, la demandada se encontraba hablando con otros dos Agentes Municipales y en voz alta informa que ella **"tenía miedo de que el demandante desconectara y asesinara a su mamá"**, siendo falso con conocimiento de su falsedad e informándolo como si fuera verídico. Por ello, la parte demandante ha sido objeto de declaraciones difamatorias de la demandada.

5. Recientemente, la co-demandada ha realizado expresiones difamatorias alegando que el demandante le ha **"robado a su madre"**, información falsa e informada por la demandada con conocimiento de su falsedad e informándolo como si fuera verídico al Sr. Juan Zalduondo. Éste último se acercó al demandante para preguntarle, sufriendo el demandante por ello y teniendo que informar la falsedad de ello y corregir que quien único se ha apropiado y usurpado pertenencias de su madre Rosalía es la co-demandada Vanessa, que quien para tratar de desviar la atención y ante el hecho de que el demandante ha comenzado los procedimientos judiciales para desenmascarar la verdad ha empezada la campaña difamatoria.

Como parte del estándar de difamación que se efectúa ante una persona privada, hay que probar los elementos necesarios, más demostrar que se incurrió en negligencia. Ahora bien, tomando como ciertos los hechos alegados en la demanda enmendada, ninguno de ellos nos mueve a concluir que se cumplió con los elementos del estándar de difamación antedicho.

Por otro lado, concluimos que las expresiones de la señora Ugobono Díaz realizadas al señor Zalduondo no constituyen una expresión difamatoria. Luego de haber evaluado en el derecho aplicable sobre la libertad de expresión y el derecho a la intimidad y en el balance de intereses que convergen ante estos dos importantes derechos, es preciso sostener el derecho de la libertad de expresión y de intimidad que ostenta una persona en una conversación privada. Así pues, es menester señalar que la opinión brindada por la señora Ugobono Díaz al señor Zalduondo constituye una opinión de su percepción, la cual está protegida por nuestra Constitución, mientras no contenga hechos que sean susceptibles de juzgar.[10]

---

[10] CONST.P.R., Art. II sec. 4 y 8.

Aun tomando como cierto, que la conversación entre la apelada y el señor Zalduondo cumpliera con el requisito de publicación, continúa constituyendo una opinión de la señora Ugobono Díaz hacia el apelante, en una conversación de carácter privado. A su vez, la alegación del apelante sobre este particular no detalla los **daños reales** sufridos por dichas expresiones.

De la misma forma, tanto la Ley de Libelo y Calumnia, *supra*, como la jurisprudencia interpretativa han destacado desde tiempos inmemorables que "**Un ciudadano que sospeche razonablemente que se ha cometido o que se piensa cometer un crimen tiene el privilegio, para su protección y la de la sociedad, de comunicárselo a las autoridades correspondientes o a quien él crea de buena fe que pueda tomar acción correctiva. La comunicación puede ser falsa, pero el privilegio persiste**". *Cortés Portalatín v. Hau Colón, supra*, pág. 739 citando a *Quiñones v. J. T. Silva Banking and Commercial Co., supra.* Según expuesto previamente y según las alegaciones del apelante, las expresiones vertidas por la señora Ugobono Díaz fueron realizadas a un agente del orden público en el curso de una investigación, según alegó el propio señor Ugobono Díaz en su demanda enmendada:

> 2. Que al llegar a la residencia de su madre, Rosalía Magadalena Díaz Sinko, **le fue negado el acceso, por lo que llamó a la policía.**
> [...]
> 4. Cuando el demandante logró acceso a la residencia de su madre y poder verla, la demandada se encontraba hablando con otros dos Agentes Municipales y en voz alta informa que ella "tenía miedo de que el demandante desconectara y asesinara a su mamá", siendo falso con conocimiento de su falsedad e informándolo como si fuera verídico. Por ello, la parte demandante ha sido objeto de declaraciones difamatorias de la demandada.

Según surge de los autos de epígrafe, y ante la multiplicidad de controversias entre las partes, los acercamientos entre los hermanos Ugobono Díaz han sido reiteradamente antagónicos. Por lo que es sensato concluir que, en las expresiones realizadas a un

oficial de la policía, la apelada sospechara razonablemente y de buena fe que se podía cometer un crimen, toda vez que entre ambas partes ha fluctuado un comportamiento agresivo y hostil. Además, señala el apelante que según lo resuelto en *Bosch v. Editorial El Imparcial, Inc.*, 87 DPR 285 (1963), no aplica la defensa que brinda este privilegio restringido y que es una cuestión puramente estatutaria. El precitado caso sostiene que: "**A menos que el privilegio surja de la faz de la demanda, como por ejemplo cuando se alega en la demanda que el libelo consiste en la publicación fiel y exacta de un procedimiento judicial, en cuyo caso debe prosperar una moción para desestimarla, la regla es que la defensa de privilegio no se puede alegar por vía de moción para desestimar o por excepción previa**". *Íd.* pág. 305.

Sin embargo, cuando el privilegio surge de la faz de la demanda, sí puede prosperar la defensa. *Nos explicamos*. Según una lectura integral de la demanda enmendada, el apelante expone que, por habérsele negado el acceso a la residencia de su madre, este llamó a la policía. Posteriormente, encontró a la señora Ugobono Díaz hablando con dos agentes municipales y les manifestó que "*tenía miedo de que el demandante desconectara y asesinara a su mamá*". Según las expresiones que vertió la señora Ugobono Díaz a los oficiales de la policía, sí se cumplen con los requisitos de la doctrina de privilegio restringido antes precitada. Se desprende de la demanda enmendada que dichas expresiones quedan cobijadas bajo la Sección 4 de la Ley de Libelo y Calumnia, *supra*. La cobertura del privilegio restringido surge de las propias alegaciones de la demanda enmendada. Por lo que la señora Ugobono Díaz no es responsable ante el apelante por dichas expresiones.

Asimismo, el apelante arguye que erró el foro inferior al no determinar que la opinión de una persona no puede generar una causa de acción por difamación. Luego de auscultar los requisitos

establecidos en la causa de acción por difamación, concluimos que los mismos no fueron satisfechos para establecer responsabilidad por difamación. Aplicando integralmente la jurisprudencia y legislación antes expuesta, podemos colegir que las expresiones están cobijadas por ser consideradas una opinión de la señora Ugobono Díaz. Tal como concluyó el foro primario, las expresiones realizadas por la señora Ugobono Díaz al señor Zualdondo, en la privacidad de su comunicación, constituyen una opinión y están protegidas por la libertad de expresión. El tratar de penalizar a un ciudadano particular por sostener una opinión contraria al señor Ugobono Díaz, viola la garantía a la libertad de expresión contenida en la Constitución de Puerto Rico, *supra*. En el caso de marras, no se ha demostrado los elementos requeridos por la jurisprudencia antedicha. *Por lo que no se cometieron los errores señalados.*

Por último, discutimos el error F, donde el apelante arguye que incidió el Foro a *quo* al no determinar que no se configuraba una acción de persecución maliciosa por haberse expedido una orden de protección en contra del apelante. *No le asiste la razón.*

Como destacamos previamente, en la doctrina de persecución maliciosa, en síntesis, deben concurrir los siguientes requisitos: (1) que una acción civil fue iniciada, o un proceso criminal instituido, por el demandado o a instancia de éste; (2) que la acción, o la causa, terminó de modo favorable para el demandante; (3) que fue seguida maliciosamente y sin que existiera causa probable, y (4) que el demandante sufrió daños y perjuicios como consecuencia de ello.

El propio apelante arguye en su Recurso, que entre las partes se inició un *Proceso Ex parte* al amparo de la Ley Núm. 121-2019 que resultó en una Orden de Protección Provisional a favor de la adulta mayor, la señora Díaz Sinko. **Es preciso señalar, que esta solicitud fue en beneficio de la señora Díaz Sinko, no entre las partes aquí concernientes, es decir entre el apelante y los**

**hermanos Ugobono Díaz**. Posteriormente, según surge de los autos, el Tribunal emitió una orden al amparo de la Ley Núm. 140-1974, para conservar el estado de las visitas a la señora Díaz Sinko.

El apelante concluye que, por los apelados haber iniciado un procedimiento ex parte es suficiente para satisfacer el estándar de persecución maliciosa que los hermanos Ugobono Díaz han desarrollado en su contra. En adición, sostiene que a raíz de los mencionados eventos ha sufrido daños. No nos convence dicho argumento.

La jurisprudencia de nuestro Tribunal Supremo ha sido enfática en que dichos requisitos bajo la causal de persecución maliciosa deben ser satisfechos concurrentemente. En este caso, no se cumplen con los elementos de la causa de acción de persecución maliciosa antes mencionados. Tampoco se demostraron los alegados daños sufridos. *No se cometió el error señalado.*

### IV.

Por los fundamentos antes expresados, las cuales hacemos formar parte de este dictamen, *confirmamos* la *Sentencia* apelada emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Rivera Colón concurre sin voto escrito. El juez Monge Gómez concurre con las siguientes expresiones: "Estoy de acuerdo en que procede confirmar la Sentencia apelada, sin embargo, abordaría el análisis del caso de una manera distinta".

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones